# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ANGELA NEAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TARGET CORPORATION, HOME | ) | |
| NICHES, INC., WALSAY, INC. and | ) | |
| XIAMEN YEKI HOUSEHOLD PRODUCTS | ) | |
| & TOURIST ARTICLES CORP., LTD., | ) | Case No. 13 C 5907 |
| | ) | |
| Defendants. | ) | |
| | ) | |
| TARGET CORPORATION, | ) | Honorable John Robert Blakey |
| | ) | |
| Cross-Claim Plaintiff, | ) | |
| | ) | Magistrate Judge Susan E. Cox |
| v. | ) | |
| | ) | |
| HOME NICHES, INC., WALSAY, INC., | ) | |
| and XIAMEN YEKI HOUSEHOLD | ) | |
| PRODUCTS & TOURIST ARTICLES | ) | |
| CORP., LTD., | ) | |
| | ) | |
| Cross-Claim Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This case is before the Court on two motions: (1) Target's motion for partial summary judgment [124]; and (2) plaintiff's motion for leave to amend her complaint to add punitive damages claims against the non-manufacturer defendants [145]. For the reasons explained more fully below, both motions are granted.

Background & Procedural History

On July 17, 2013, plaintiff Angela Neal sued Target Corporation, Home Niches, Inc., and Walsay Inc., in Cook County Circuit Court. She claimed that her son suffered damages (right eye blindness) when he was injured on July 12, 2012 by a pop-up laundry hamper she purchased at Target in August 2010 [1]. Home Niches and Walsay supplied the hampers to Target, which then sold them to retail customers like Neal. Neal alleged strict and negligent product liability and sought damages to compensate her and her son for the injuries he sustained.

The defendants removed the action to federal court on August 19, 2013 [1]. Following removal, Walsay filed a counterclaim against Target for contribution [30]; Target filed an eight-count cross-claim against Walsay and Home Niches [32] based upon certain vendor agreements between the parties; Walsay then refiled its counterclaim for contribution as a cross-claim against Target, which Home Niches joined as a cross-claimant [33]; and Walsay filed a third-party complaint against Xiamen Yeki Household Products & Tourist Articles Corp. [43].

On March 28, 2014, Neal amended her complaint to add the manufacturer as a defendant, alleging product liability and seeking compensatory as well as punitive damages [46]. Target and Home Niches also filed cross-claims against the manufacturer [49], [56].

With regard to the allegations in plaintiff's complaint, Target admits that it distributed and sold pop-up clothes hampers but denies that it is in the business of designing, manufacturing or assembling them. Home Niches and Walsay's Joint

Response to Target's Local Rule 56.1(a) Statement of Undisputed Material Facts [136], ¶9. Home Niches and Walsay admit that they are in the business of distributing, selling or otherwise placing pop-up clothes hampers into the stream of commerce but deny that they design, manufacture or assemble them. *Id.*, ¶10. Yeki admits that it manufactured the product. *Id.*, ¶11. Home Niches admits that in and before 2010 it had a sales agreement with Yeki pertaining to the manufacture of the product. *Id.*, ¶12. And Home Niches concedes that it was the distributor of the product. *Id.*, ¶13.

Plaintiff claims she purchased the hamper in August 2010 at the Target store in the River Oaks Mall in Calumet City, Illinois. *Id.*, ¶14. Target claims that Home Niches was the only source from which Target obtained pop-up clothes hampers in 2010 and that all of the pop-up clothes hampers sold in Target stores in 2010 were obtained from Home Niches under the Home Niches contract. Target's Statement of Facts, ¶15.

Beginning in or around December 2004, Target and Home Niches were parties to a contract, generally referred to as the Partners Online Agreement, setting forth terms and conditions pertaining to the purchase of goods by Target from Home Niches. Target's Statement of Facts, ¶16. The "contract" between Target and Home Niches actually consisted of three documents: a signature page; a document entitled "Rules of Use and Confidentiality Agreement"; and a document entitled "Conditions of Contract."

It is undisputed that the contract included an indemnification provision stating as follows:

> Defense, Indemnification. [Home Niches] shall defend, indemnify and hold harmless [Target], its parent, affiliates, agents and employees, from and against any and all liability, claims, suits, actions, losses and expenses, including costs and attorney fees, relating to or arising out of any claim or demand of any kind or nature, which any buyer or user of the Goods, or any other person (including employees or agents of [Home Niches]), whether in privity to [Target] or not, may make against [Target], based upon or arising out of the manufacture, delivery, ticketing, labeling, packaging, placement, promotion, sale or use of the Goods, or [Home Niches]'s performance of or failure to perform in accordance with the terms of this Contract (including, but not limited to, [Home Niches]'s obligation to indemnify [Target] as provided herein), whether based on claim of breach of express or implied warranty, workers' compensation, or any other legal theory of liability, or if brought as a class action or not…. It is the intent of the parties hereto that all indemnity obligations be without limit, without regard as to whether or not [Target] furnishes specifications or inspects the Goods, and without regard as to the negligence of any party or parties, whether such negligence be sole, joint or concurrent, active or passive.

Target's Rule 56.1 Statement of Facts, ¶23 (quoting Conditions of Contract, section 10). Home Niches and Walsay admit that the contract between Home Niches and Target included this language. Home Niches and Walsay's Joint Response to Target's Rule 56.1(a) Statement of Facts [136], ¶23.

It is also undisputed that the contract included a provision relating to insurance, which stated:

> Insurance. [Home Niches] agrees to obtain and maintain the following insurance coverage, at [Home Niches]'s sole cost and expense … The insurance obligations of [Home Niches] herein shall survive the completion or termination of any order under this Contract. … The purchase of insurance and furnishing of such certificates shall not limit [Home Niches]'s obligations hereunder or in any way modify [Home Niches]'s agreement to indemnify Target as set forth hereunder …

4

a. Commercial general liability insurance, including products liability/completed operations, with a minimum combined single limit of $1,000,000.00 for bodily injury, and property damage per occurrence, and $5,000,000.00 general and products liability aggregate including coverage for contractual indemnification obligations.

(i) Additional insured endorsement CG2026 or equivalent.

\* \* \* \* \*

(iii) [Home Niches] must provide insurance for the life of the Goods covering claims occurring or brought by third parties after [Target] discontinues sale of the Goods.

\* \* \* \* \*

d. Employer's liability insurance in the amount of $1,000,000.00 each accident for bodily injury, $1,000,000.00 policy limit for bodily injury or disease. Such policies shall (i) provide that Target Corporation and its subsidiaries, divisions, affiliates, associated companies or other interest including but not limited to joint ventures or partnerships are named as additional insureds with respect to all operations performed by or on behalf of [Home Niches] (except for Worker's Compensation); (ii) be obtained from an insurance company or companies licensed to do business in the United States with an A.M. Best rating of A-:X or better; (iii) cover claims brought in the United States (including its territories and possessions), Puerto Rico and Canada; (iv) provide that the policy shall not be terminated or materially changed without at least thirty (30) days prior written notice to Target Corporation's Risk Management Department.

Target's Rule 56.1(a) Statement of Facts, ¶22 (quoting Ex. E, Conditions of Contract, section 15). Home Niches and Walsay admit that the contract between Home Niches and Target included this language. Home Niches and Walsay's Joint Response to Target's Rule 56.1(a) Statement of Facts [136], ¶22.

5

Additionally, on March 11, 2011, Home Niches and Walsay executed an Assignment and Assumption of Liabilities Agreement, which assigned to Walsay all of Home Niches' rights in its account with Target. *Id.*, ¶¶19-20.

Pursuant to the language in the Partners Online Agreement, and pursuant to the Assignment between Home Niches and Walsay, Target requested that Home Niches, Walsay and/or their insurers defend and indemnify Target against the plaintiff's claims. Target's Statement of Facts, ¶30. Home Niches has not accepted Target's request that it defend and indemnify Target against plaintiff's claims; neither has Walsay. *Id.*, ¶¶32, 34. Nor has Home Niches or Walsay provided insurance coverage indemnifying Target against any potential liability asserted against Target by plaintiff. *Id.*, ¶¶33, 35. Neither Home Niches nor Walsay filed an answer to Target's cross-claim.

Fact discovery closed on June 30, 2015 and, as of June 16, 2015, was largely complete. Expert discovery is expected to take three to four months to complete. There are presently two motions pending before the Court. On October 29, 2014, Target filed a motion seeking partial summary judgment on Counts II, III, V and VI of its cross claim against Home Niches and Walsay [124]. Also pending is plaintiff's motion seeking leave to amend her complaint to add a punitive damages claim against Target, Home Niches and Walsay [145]. The Court considers each motion below.

Discussion

A.   Target's Motion for Partial Summary Judgment

Target seeks summary judgment on Counts II, III, V, and VI of its cross-claim against Home Niches and Walsay. Counts II and V allege express indemnification against Home Niches and Walsay respectively. And Counts III and VI allege breach of contract against Home Niches and Walsay respectively.

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether a genuine issue of material fact exists, this Court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party, here, Plaintiff. *See CTL ex rel. Trebatoski v. Ashland School District*, 743 F.3d 524, 528 (7th Cir. 2014).

Target's motion for partial summary judgment is predicated on an agreement it signed with Home Niches in or around December 2004. According to Target, that contract, generally referred to as the Partners Online Agreement, included a provision requiring Home Niches to defend, indemnify and hold Target harmless

from and against claims such as the one plaintiff asserts here, and to obtain insurance to cover claims such as the plaintiff's. Target argues that Home Niches failed to meet its obligations under the agreement. It also argues that, pursuant to an Assignment and Assumption of Liabilities Agreement, Walsay is also liable for failing to defend and indemnify and for failing to obtain insurance naming Target as an insured.

1. <u>Express Indemnification Claims (Counts II and V)</u>

The plain language of the contract between Home Niches and Target requires Home Niches to indemnify Target for claims such as those brought by plaintiff. Home Niches does not dispute that the contract included this indemnification provision and does not argue that plaintiff's claims would somehow be outside the scope of the clause. Instead, Home Niches argues that the provision is void and unenforceable under Minnesota law, which the parties agree applies. *See* Partners Online Agreement [32-1], ¶10).

To resolve the dispute, the Court looks to the agreement itself, which was attached as an exhibit to Target's pleadings. The agreement provides as follows:

> **Indemnification and Defense of Purchaser**
> Vendor shall defend, indemnify and hold harmless Purchaser, its affiliates, and their respective directors, officers, shareholders, employees, contractors and agents (collectively, the "Purchaser Parties") from and against any liabilities, losses, investigations or inquiries, claims, suits, damages, costs and expenses (including without limitation, reasonable attorneys' fees and expenses)(each a "Claim") arising out of or otherwise relating to the subject matter of the Contract, including any claim or demand of any kind or nature, which any buyer or user of Goods, or any other entity or person (including employees or agents of Vendor), whether in privity to Purchaser or not, may make against any of the Purchaser Parties,

8

> based upon or arising out of the manufacture, delivery, ticketing, labeling, packaging, placement, promotion, sale, or use of Goods, Vendor's performance or failure to perform as required by the Contract, Vendor's acts or omissions, or any of Vendor's representations or warranties contained in the Contract…. It is the intent of the parties hereto that all indemnity obligations be without limit and without regard as to whether or not Purchaser furnishes specifications or inspects Goods.

According to Target, this provision is dispositive on the question of who is required to defend against plaintiff's claims and on the question of who will be required to pay any judgment entered in plaintiff's favor on those claims.

Home Niches argues that the indemnification clause is void because it seeks to indemnify an indemnitee for its own negligence. In making this argument, Home Niches argues that under Minnesota law,[1] indemnification clauses that seek to indemnify an indemnitee for its own negligence are not always given effect. Home Niches and Walsay's Joint Response to Target's Motion for Partial Summary Judgement [135], pp. 3-4. "Agreements seeking to indemnify the indemnitee for losses occasioned by its own negligence are not favored by the law and are not construed in favor of indemnification unless such intention is expressed in clear and unequivocal terms, or unless no other meaning can be ascribed to it." *Yang v. Voyagaire Houseboats, Inc.*, 701 N.W.2d 783, 791 (Minn. 2005)(quoting *Nat'l Hydro*

---

[1] Under Illinois law, choice of law clauses are generally enforceable: "the law applicable to a contract is the law intended by the parties." *Smurfit Newsprint Corp. v. Southeast Paper Mfg.*, 368 F.3d 944, 949 (7th Cir. 2004). "When the parties express that intent (such as through a governing law provision), that express intent is generally recognized." *Id.* (citing *Hofeld v. Nationwide Life Ins. Co.*, 322 N.E.2d 454, 458 (Ill. 1975)). Here, the parties' contract includes a choice of law provision, and all parties agree that Minnesota law applies.

9

*Sys. v. M.A. Mortenson Co.*, 529 N.W.2d 690, 694 (Minn.1995)). Nor, under Minnesota law, will courts enforce an indemnification clause if it is contrary to public policy. *Id.*

Home Niches and Walsay argue that the contract does not clearly provide for indemnification in the case of Target's negligence. But it does. The indemnification clause specifically provides that: "[i]t is the intent of the parties hereto that all indemnity obligations be without limit, without regard as to whether or not [Target] furnishes specifications or inspects the Goods, **and without regard as to the negligence of any party or parties, whether such negligence be sole, joint or concurrent, active or passive.**" Target's Rule 56.1 Statement of Facts, ¶23 (quoting Conditions of Contract, section 10)(emphasis added).

In *McDonald v. Target Corp.*, No. A12-0747, 2013 WL 869680, at *2 (Minn. Ct. App. May 29, 2013), the court was asked to consider a provision similar to the one at issue here, except that it did not include the bold language quoted above and stopped at "without regard as to whether or not [Target] . . . inspects the Goods." Recognizing that indemnification clauses should be given effect where the intent of the parties is "clear and unequivocal," the court held that the provision was not sufficiently explicit as to the parties' intent for indemnification arising out of Target's own negligence. *Id.*, at *2. Because of this, the court declined to enforce the clause. *Id.* Here, the language is explicit. Minnesota courts, like Illinois courts, respect the parties' clear intent unless doing so would implicate some overriding public policy concern. *Id.* There does not seem to be any public policy implicated

here. Neither Home Niches nor Walsay argues that enforcement of the clause violates any public policy. Accordingly, the Court finds that Target is entitled to judgment as a matter of law on its express indemnification claims.

 2. Breach of Contract Claims (Counts III and VI)

Target alleges that Home Niches and Walsay breached the Partners Online Agreement by failing to name Target as an additional insured on their insurance policies and by failing to indemnify and defend against this claim as required by that agreement. Neither party devotes much time or attention to these claims, apparently relying on the arguments relating to the contract provisions discussed above. To prevail on a breach of contract claim, Target must show more than simply the existence of a valid contract. It must also show that it performed its obligations under the contract and that Home Niches and Walsay failed to perform their obligations under the contract. *E.g., Lyon Financial Services, Inc. v. Illinois Paper & Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014)("The elements of a breach of contract claim are '(1) formation of a contract, (2) performance by plaintiff of any conditions precedent to his right to demand performance by the defendant, and (3) breach of the contract by defendant.'")(quoting *Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 833 (Minn. 2011)). However, as a practical matter, neither of the other elements is disputed. There is no dispute that Target performed whatever obligations it had under the agreement. There is no dispute that Home Niches and Walsay did not procure the insurance required under the Partners Online Agreement. There is no dispute that neither Home Niches nor Walsay named

11

Target as an additional insured on any commercial liability policy. Although not required, Target argues that it has suffered damages in the form of defense costs that would have been paid by Home Niches and Walsay's insurers if they had procured the agreed upon insurance coverage. Neither Home Niches nor Walsay disputes this.

In light of the analysis and discussion above, the Court finds that Target has demonstrated the existence of a valid contract – including a valid indemnification clause. Additionally, Target has shown that it performed its obligations under that contract and has shown that Home Niches did not. Target has also shown that, pursuant to the March 2011 Assignment, Walsay was also obligated to perform under the Partners Online Agreement and did not. As a result, Target is entitled to judgment as a matter of law on its breach of contract claims against Home Niches and Walsay.

B.    Plaintiff's Motion for Leave to Amend

Also before the Court is plaintiff's motion to amend her complaint to add punitive damages claims against Target, Home Niches and Walsay. Federal Rule of Civil Procedure 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires." Leave may appropriately be denied, however, where there is "undue delay, bad faith, dilatory motive, prejudice, or futility." *E.g., Guise v. BMW Mortgage, LLC*, 377 F.3d 795, 801 (7th Cir. 2004). None of these exists here.

To be sure, "[a]lmost every amendment of a complaint results in some prejudice to the defendant." *Ocean Atlantic Woodland Corp. v. DRH Cambridge Homes, Inc.*, No. 02 C 2523, at *2 (N.D. Ill. Dec. 1, 2003). The question is whether that prejudice is "undue," *id.*; Fed. R. Civ. P. 15(a), and here it is not. As an initial matter, although it is relatively late in the game for an amendment, counsel for plaintiff indicated that the basis for the punitive damages claim was not clear at the outset, but that it became clear through discovery. More specifically, counsel represented that evidence of prior similar occurrences came to light within the past few months suggesting that Target and its vendors knew about the potential for harm, but did nothing to prevent it. Counsel represented that he sought leave to add the claim within a reasonable time after he had sufficient evidence to support the claim. Second, according to counsel, the amendment will not require additional discovery and will not delay case proceedings. The defendants do not dispute this.

Target, Home Niches and Walsay oppose the amendment. They do not argue undue delay, bad faith, dilatory motive or prejudice; rather, they argue that the prior incidents are not sufficiently similar to justify the imposition of punitive damages. That is an argument for another day. For now, the Court need not assess whether plaintiff will be able to prove at trial that she is entitled to punitive damages based upon the evidence. It is enough to determine that she should be permitted to bring the issue into the case. Plaintiff's motion for leave to amend her complaint [145] is granted. Plaintiff is directed to file her proposed amended complaint as a separate docket entry.

## Conclusion

For the reasons explained above, Target's motion for partial summary judgment [124] and plaintiff's motion for leave to amend [145] are granted.

Dated: July 1, 2015

ENTERED:

_____
John Robert Blakey
United States District Judge