IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANGELA NEAL, individually and as )
Mother and next friend of )
KEON REEVES, a minor, )
 )
              Plaintiff, ) Case No. 13 C 5907
 )
v. ) Jeffrey T. Gilbert
 ) Magistrate Judge
TARGET CORPORATION, et al. )
 )
             Defendants. )

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion to Enforce Settlement Agreement and For Sanctions [ECF No. 188] and Defendant/Cross-Claimant Target Corporation's Motion to Enforce Settlement Agreement and for Attorneys' Fees and Costs [ECF No. 193]. For the reasons discussed herein, Plaintiff's Motion [ECF No. 188] is denied as moot because Plaintiff has received all settlement proceeds due to her. Target's Motion [ECF No. 193] is granted to the extent the Court will exercise jurisdiction over Northern Insurance Company for the purpose of enforcing and clarifying the terms of the settlement reached in this case on November 13, 2015, and is denied in all other respects.

## I. BACKGROUND

### A. Factual Background And Procedural History

This is a personal injury case filed by Plaintiff Angela Neal on July 17, 2013, in the Circuit Court of Cook County, Illinois, and it was removed to this Court based on diversity jurisdiction. In her complaint, Plaintiff alleges that she bought a pop-up clothes hamper in

August 2010 at a Target store and that on July 12, 2012, her minor son suffered an eye injury caused by an alleged defect in the pop-up hamper.

Plaintiff sued Target and the following entities: Defendants Xiamen Yeki Household Products & Tourist Articles Corp., Ltd. ("Yeki"), the manufacturer of the hamper; Home Niches, Inc. ("Niches"), the distributor of the hamper under a contract with Target; and Walsay, the successor to Niches, which had assumed all of Niches's contractual liabilities to Target under an assignment and assumption of liabilities. Target filed a cross-claim against Niches and Walsay, alleging breach of the agreement by Niches (and subsequently by Walsay) to defend and indemnify Target against claims such as those brought by Plaintiff and to provide Target with insurance coverage for those claims.

On July 1, 2015, the Court granted partial summary judgment in Target's favor as to its cross-claim against Niches and Walsay. Specifically, the Court concluded that a valid contract existed between Target and Niches, and that the contract included valid indemnification and insurance-procurement clauses. The Court further determined that Target performed its obligations under the contract and that Niches failed to perform its contractual obligation to defend and indemnify Target and procure insurance covering Target. The Court also found that Walsay owed Target the same obligations and likewise failed to perform them. *See generally* [ECF No. 150], at 1-12.

On July 20, 2015, the Court entered an order directing entry of a final judgment pursuant to Federal Rule of Civil Procedure 54(b) with respect to Target's cross-claim against Niches and Walsay and finding that no just reason existed to delay enforcement or appeal of said order. *See* [ECF No. 156]. No party has appealed the judgment, which entitles Target to recover from Niches and Walsay all sums Target pays to Plaintiff in settlement of her claim. It also entitles

Target to recover from Niches and Walsay all attorneys' fees and costs incurred in its defense. All that remains in that regard is for Target to prove-up the amounts it is owed.

### B. The Michigan Coverage Action

Northern Insurance Company ("Northern") insured Walsay under an insurance policy in effect at the time of Plaintiff's injury. On September 5, 2014, Northern filed an insurance coverage action captioned *Northern Insurance Company of New York vs. Walsay, Inc., et al.*, currently pending in the United States District Court for the Eastern District of Michigan, Southern Division, Case No. 14-cv-13458 (the "Michigan Coverage Action"). Walsay, Niches, and Target originally were named as defendants in the Michigan Coverage Action, although all claims by or against Niches and Walsay were dismissed with prejudice by order dated December 3, 2015. Northern and Target are the only remaining parties in the Michigan Coverage Action. On January 21, 2016, the district court in the Michigan Coverage Action denied Target's motion for summary judgment against Northern, rejecting its argument that Northern was required to indemnify Walsay for its contractual obligations to Target as a matter of law.

### C. Settlement Negotiations

The parties participated in two settlement conferences in this case. Magistrate Judge Cox conducted the first settlement conference on September 24, 2014. That conference did not result in a settlement. The second settlement conference was conducted by this Magistrate Judge on November 13, 2015, during which the parties reached a settlement and executed a term sheet. Plaintiff and her counsel attended both settlement conferences as did a party representative for Target and its counsel, a party representative for Yeki and its counsel, and a party representative for Walsay, William Weiss, who is a claims adjuster for Northern, and Joseph Vallort, who is an attorney hired by Northern to defend Walsay. Counsel for Northern in the Michigan Coverage

3

Action, Charles Browning, and Northern's representative, Jacob Prince, also attended the settlement conferences on behalf of Northern.

After the parties reached agreement, their representatives and counsel orally recited the material terms of the settlement, and the Court typed a term sheet that was intended to embody the material settlement terms subject to execution of a written settlement agreement. The parties and their lawyers reviewed and revised the draft term sheet, and a final version of the term sheet was signed by all settling parties and their counsel. Mr. Weiss, Northern's claims adjustor for Walsay, who still was present in Court during the discussion and signing of the term sheet, did not sign the term sheet, although Mr. Vallort, the lawyer Northern hired to defend Walsay, did sign the term sheet. The Court did not discover that Mr. Weiss did not sign the term sheet until the instant dispute arose. Northern's Mr. Browning and Mr. Prince, who left the settlement conference early with the Court's permission, also did not sign the term sheet.

After the settlement conference, Target prepared a settlement agreement as contemplated by the term sheet. The parties are in agreement about most of its terms. The term at issue now, which is the center of the current dispute, is to what extent the settlement of this case impacts, if at all, the Michigan Coverage Action and what arguments and claims Target and Northern retain in the Michigan Action in view of the settlement of this case.

All payments due to Plaintiff under the settlement agreement have been tendered to Plaintiff, and all settling parties, except Northern, have executed the settlement agreement. The only issues presently before this Court is whether the settlement can be enforced against Northern and what the parties agreed in connection with the settlement of this case regarding the Michigan Coverage Action.

## II. ANALYSIS

This Court has the inherent authority to enforce a settlement agreement in a case pending before it. *Wilson v. Wilson*, 46 F.3d 660, 664 (7th Cir. 1995). An oral settlement agreement reached during a settlement conference is fully enforceable by the court presiding over the litigation. *Carr v. Runyan*, 89 F.3d 327-329-33 (7th Cir. 1996). When a dispute arises over the enforceability of a settlement reached with the court's assistance, the court may rely on its own recollections regarding the substance of the negotiations. *Paschen*, 590 N.E.2d at 543.

State contract law governs issues concerning the formation, construction, and enforcement of settlement agreements. *Sims-Madison v. Inland Paperboard & Packaging, Inc.*, 379 F.3d 445, 448 (7th Cir. 2004) (citing *Pohl v. United Airlines, Inc.*, 213 F.3d 336, 338 (7th Cir. 2000)). Both parties rely on Illinois law to support their arguments. Under Illinois law, the existence of a valid and enforceable contract is a question of law when the basic facts are not in dispute. *Echo, Inc. v. Whitson Co.*, 121 F.3d 1099, 1102 (7th Cir. 1997). A settlement agreement is enforceable if there was a meeting of the minds or mutual assent to all material terms. *Abbott Labs. v. Alpha Therapeutic Corp.*, 164 F.3d 385, 387 (7th Cir. 1999) (citing *SBL Assoc. v. Village of Elk Grove*, 617 N.E.2d 178, 182 (Ill. 1993)). Material terms are sufficiently definite and certain when they enable a court to ascertain what the parties agreed to do. *K4 Enters., Inc. v. Grater, Inc.*, 914 N.E.2d 617, 624 (Ill. App. Ct. 2009) (citing *Midland Hotel Corp. v. Reuben H. Donnelly Corp.*, 515 N.E.2d 61, 65 (Ill. 1987)). Illinois follows the objective theory of intent in which the written records of the parties' actions — rather than their subjective mental processes — drive the inquiry. *Newkirk v. Village of Steger*, 536 F.3d 771, 774 (7th Cir. 2008); *see also Int'l Minerals & Chem. Corp. v. Liberty Mut. Ins. Co.*, 522 N.E.2d 758, 764 (Ill. App. Ct. 1988) ("The paramount objective is to give effect to the intent of the parties as expressed by the terms of the agreement.").

## A. The Court Has Jurisdiction Over Northern

As a threshold matter, Northern argues that this Court does not have jurisdiction over it since it is not a named party to this case and has not filed an appearance in this case. The Court disagrees and finds that Northern submitted to the jurisdiction of this Court by participating in two settlement conferences convened in this case in this District.

Federal Rule of Civil Procedure 16 provides that a district court may direct the attorneys for any party and any unrepresented party to appear at a pretrial conference for the purpose of "facilitating the settlement of a case." FED. R. CIV. P. 16(a)(5). Rule 16 further permits courts to take appropriate action with respect to settlement, including the use of special procedures to assist in resolving the dispute. FED. R. CIV. P. 16(c)(2)(I). In addition, Local Rule 16.1(5) provides that "[t]he court may require that representatives of the parties with authority to bind them in settlement discussions be present or available by telephone during any settlement conference." Local Rule 16.1(5).

Numerous courts have found authority under Federal Rule 16 to order a party's insurance carrier to attend court-ordered settlement conferences. For example, in *Lockhardt v. Patel*, 115 F.R.D. 44 (E.D. Ky. 1987), a district court "[found] it necessary . . . to discuss the question of its authority to order parties and their insurers to attend settlement conferences" after the parties' insurer failed to send a representative from the home office to attend a settlement conference. 115 F.R.D. at 45. The court recognized that "[t]he authority of a federal court to order attendance of attorneys, parties, and insurers at settlement conferences and to impose sanction for disregard of the court's orders is so well established as to be beyond doubt." *Id.* at 46 (citing 6 Wright & Miller, Federal Practice & Procedure, § 1526 (1971); Moore's Federal Practice, § 16.16.1, 16.22)). The court further held that Rule 16 "would be meaningless if it did not also

6

apply to a party's liability insurer." *Id.*; *see also Logan v. Illinois Central R. Co.*, 2007 WL 171863, at *2-5 (S.D. Ill. Jan. 18, 2007) (finding the court's authority to require the presence of parties at a settlement conference extended to defendant's insurance representatives).

District courts have the inherent power to order that parties necessary to effectuate a settlement in a case attend a settlement conference. In *G. Heileman Brewing Co., Inc. v. Joseph Oat Corp.*, 871 F.2d 648 (7th Cir. 1989), the Seventh Circuit held that a district court had the authority to order that a represented litigant appear in person for a settlement conference. 871 F.3d at 650-53. The Seventh Circuit noted that the Federal Rules did not "completely describe and limit the power of the federal courts. The Seventh Circuit reasoned that the absence of language in any rule expressly authorizing certain power did not necessarily bar exercising such power, as written civil procedure laws only "form and shape certain aspects of a court's inherent power" and thus may allow the exercise of unwritten power, through any "inherent authority" should be exercised "to make the operation of the court more efficient, to preserve the integrity of the judicial process and to control the court's dockets." *Id.* at 651-52. The Seventh Circuit held that "[i]nherent authority remains the means by which district judges deal with circumstances not proscribed or specifically addressed by rule or statute, but which must be addressed to promote just, speedy, and inexpensive determination of every action." *Id.* at 652; *see also* FED. R. CIV. P. 16(c)(2)(P).

Here, the Court did not have to order Northern to attend the settlement conference, whether or not it had the inherent authority to do so. Northern's insurance coverage counsel in the Michigan Coverage Action, Mr. Browning, and Northern's representative, Mr. Prince, voluntarily attended on behalf of Northern not only one but two settlement conferences in this case. Further, Northern's insured Walsay is a party to this litigation. The lawyer Northern hired

7

to defend Walsay, Mr. Vallort, and Mr. Weiss, Northern's claims adjuster for Walsay under an insurance policy issued by Northern, also attended the November 2015 settlement conference. Mr. Browning also attended the status hearing held before this Court on December 29, 2015, on the motions to enforce the settlement, during which he confirmed that he was attending on behalf of Northern.

Northern voluntarily participated in the settlement proceedings in this Court. It would not make any sense and it would disrupt the integrity of the judicial system for a non-party who voluntarily participated in a settlement conference and whose interests are acknowledged and addressed by the terms of the settlement to be able to contest jurisdiction by arguing that it technically is not a named party to the litigation. The Court, therefore, finds that Northern has submitted to the jurisdiction of this Court in connection with the settlement of this case and that the Court has the inherent authority to enforce the terms of the settlement reached in this case against not only the named parties in this case but also against Northern. *See G. Heileman Brewing Co., Inc. v. Joseph Oat Corp.*, 871 F.2d at 651-52, and the other cases cited above.

### B. The Settlement And The Michigan Coverage Action

The next issue that the Court must resolve is what Target and Northern agreed to at the settlement conference about how a settlement in this case would impact, if at all, the parties' positions in the Michigan Coverage Action. Target argues the settlement does not prevent it from seeking to collect from Northern in the Michigan Coverage Action the amount it paid in this settlement or the judgment it has against Niches and Walsay. Northern does not really disagree that Target can seek to collect from Northern in the Michigan Coverage Action the amount Target paid to settle this case, but Northern argues that Target cannot litigate the Michigan Coverage Action in this lawsuit and that Northern did not agree to waive any

arguments or defenses it could raise to Target's claims in the Michigan Coverage Action by settling the instant case on behalf of its insured, Walsay.

Target is not attempting to litigate the Michigan Coverage Action in this case. Target only wants to retain the ability to try to collect from Northern in Michigan what it paid to settle this case, and its costs and attorneys' fees incurred in defending this case. And Northern does not want to be held to have waived any argument it can make against Target's claims in the Michigan Coverage Action notwithstanding or in light of the settlement of this case. Neither party has litigated in this case the claims or defenses raised in the Michigan Coverage Action nor could they have done so. The settlement of this case leaves those matters to be decided in Michigan.

The term sheet negotiated and signed on November 13, 2015, specifically states that Target retains its judgment and claims against Walsay and Niches and that the settlement of the Neal litigation does not prevent Target "from seeking to collect from Northern in the Michigan litigation the amount it paid in this settlement or the judgment it has against Niches and Walsay." *See* Target's Sealed Motion to Enforce [ECF No. 192], Ex. D.[1] The term sheet also states that the settlement is not an admission of coverage or liability by Northern. *Id.* The term sheet is binding on Target and Northern. Mr. Vallort, who was hired by Northern to defend Walsay, and Mr. Weiss, Northern's claims adjustor, were present during the drafting and fine-tuning of the settlement term sheet. Neither of them objected that they had no authority to agree to the

---

[1] The Court recognizes that it is citing to a document that was filed under seal in this case and that it will cite again in this Opinion to other documents filed under seal in connection with the briefing of the pending motions. The Seventh Circuit, however, has held "[d]ocuments that affect the disposition of federal litigation are presumptively open to public view, even if the litigants strongly prefer secrecy, unless a statute, rule, or privilege justifies confidentiality" *In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010) (citing *Baxter International, Inc. v. Abbott Laboratories,* 297 F.3d 544 (7th Cir. 2002); *Union Oil Co. of California v. Leavell,* 220 F.3d 562 (7th Cir. 2000)).

settlement terms recited in the term sheet or that the finalized term sheet did not accurately reflect the material terms of the settlement including as to Northern.

Important to the Court's analysis of whether Northern is bound by the settlement of this case is the fact that the term sheet includes a particular term important only to Northern: "The settlement will not be used as an admission including without limitation an admission of liability or coverage in the Michigan litigation." *See* Target's Sealed Motion to Enforce [ECF No. 192], Ex. D. No other party except Northern would have had an interest in including such language. The Court does not accept Northern's argument that Mr. Weiss and Mr. Vallort had the authority to agree to some aspects of the settlement (for example, the payment of money and the no admission of liability language as to the Michigan Coverage Action), but did not have the authority to agree to other material terms despite being present in the room in which the settlement terms were recited, fine-tuned and memorialized.

It is true that Northern's counsel and representative in the Michigan Coverage Action, Mr. Browning and Mr. Prince, left the settlement conference before a final settlement was reached. But Northern, in briefing Target's motion to enforce, clearly articulated what it thought the settlement resolved, what it did not resolve, and what was agreed and what was not agreed. As discussed below, Northern's understanding and Target's understanding of those matters track very closely. Mr. Browning and Mr. Prince were aware of the settlement terms being discussed prior to their early departure and did not object to those negotiations continuing on that basis after they left. Northern cannot object to those terms now.[2]

---

[2] The Court's conclusion that Northern is bound by the settlement negotiated in this case in November 2015 is not simply a product of Mr. Weiss and Mr. Vallort having participated in and been present during the drafting of the term sheet. Rather, it is the totality of the circumstances here that leads the Court to conclude Target and Northern had a meeting of the minds concerning what was and what was not resolved by the settlement of this case. Mr. Vallort and Mr. Weiss were present for and/or participated in the drafting of the term sheet. Mr. Browning and Mr. Prince knew what was being discussed and

The bottom line, however, is that the settlement of this case does not impact anything either Target or Northern can argue in the Michigan Coverage Action. It also does not resolve any of those arguments. Based on the parties' written submissions on the pending motions, it is evident that the parties substantially agree with this conclusion:

According to Northern's counsel in the Michigan Coverage Action, Mr. Browning:

> "Target insisted that Target and Northern simply fund their respective shares of the Neal settlement **and thereafter let the chips fall where they may in the DJ action. Northern reluctantly agreed.**" *See* Target's Sealed Motion to Enforce [ECF No. 192], Ex. H, 12/9/15 Email from Charles Browning to Robert Burke (emphasis added);

According to Northern's representative in the Michigan Coverage Action, Mr. Prince:

> "I understood therefore that the settlement terms being proposed by Magistrate Judge Gilbert would result in Target and Northern (on behalf of Walsay, Inc.) paying their respective amounts of the settlement of the Neal Lawsuit, as negotiated, without any consideration of their respective positions in the Michigan Coverage Action and that **neither Target nor Northern would waive any position that either may have in the Michigan Coverage Action as a result of the Neal Lawsuit.**" *See* Northern's Sealed Response to Target's Motion to Enforce [ECF No. 202], Ex. B, Affidavit of Jacob Prince, at ¶21 (emphasis added); and

According to Target:

> "All of the disputed language in these two documents [the term sheet and the Settlement Agreement] does is make clear that by entering the settlement, **Target retains its judgment and is not prevented from asserting any rights it has in the Michigan coverage action. It creates no new rights favoring Target and, most importantly, it takes no rights away from Northern and does not result in an admission of liability or coverage in the**

---

ultimately the framework that would be reduced to writing. And Northern's and Target's understanding of what was settled as stated in their briefs and declarations filed in connection with the pending motions track closely as described below. Finally, the Court participated in all the settlement discussions, and in the parties' efforts to reduce their agreement to writing. All of these factors convince the Court that Northern agreed to the settlement terms outlined in the term sheet signed on November 13, 2015.

> **Michigan litigation.**" *See* Target Sealed Reply to Walsay and Northern's Responses to Target's Motion to Enforce [ECF No. 207], at 10 (emphasis added).

To the extent that Target is arguing that Northern affirmatively agreed not to argue in the Michigan Coverage Action that the settlement of this case in some way negatively affects or bars Target's claims in the Michigan Coverage Action, the Court disagrees that the settlement in this case went that far. The best Target and Northern were able to do was to settle this Illinois case and, in Northern's words, "let the chips fall where they may in the [Michigan] DJ Action." [ECF No. 192], at Ex. H, quoted above.

Given that the settlement has been fully funded and Plaintiff has received the settlement proceeds, Plaintiff's Motion to Enforce is denied as moot. To the extent that Target seeks an order requiring Northern to sign the settlement agreement, Target's Motion to Enforce is denied because it is not necessary for Northern to sign the settlement agreement. It has paid the amount it committed to pay in the settlement and it is bound by the settlement negotiated and agreed to by all named parties and Northern on November 13, 2015.

In addition, the Court declines to order Northern to sign the settlement agreement because the language in the settlement agreement that Target prepared after the settlement conference is broader than the language in the term sheet. Specifically, the last paragraph of the term sheet states the settlement "does not prevent Target from seeking to collect from Northern in the Michigan action." *See* Target's Sealed Motion to Enforce [ECF No. 192], Ex. D. The term sheet does not say, as the settlement agreement does, that the settlement "in no way interferes with or prevents Target from enforcing any contract claims it has against [Northern], or from enforcing any claims for recovery of the costs and fees it incurred in the defense of 'The Lawsuit' and/or

'The Incident' from [Northern], all such rights being specifically reserved to Target Corporation." *See* Target's Sealed Motion to Enforce [ECF No. 192], Ex. G, at 10.

The term sheet speaks in terms of Target's *retention* of claims, not its *enforcement* of those claims or any judgment. As discussed above, both Target and Northern left to another day whether and in what respect Target can recover from Northern, in the Michigan Coverage Action, the amount Target paid to settle this case or its costs and fees in defending this case. Northern agreed to the language in the term sheet, and the Court will enforce that language as to Northern. As set forth in the term sheet, Northern agreed that: "The settlement will not be used as an admission including without limitation an admission of liability or coverage in the Michigan litigation. This does not prevent Target from seeking to collect from Northern in the Michigan litigation the amount it paid in this settlement or the judgment it has against Niches and Walsay." *See* Target's Sealed Motion to Enforce [ECF No. 192], Ex. D. Target and Northern are bound by that agreement.

### C. Attorneys' Fees

Finally, the Court denies all parties' requests for attorneys' fees and costs. As discussed above, Plaintiff's Motion to Enforce is denied as moot since she received all the money contemplated by the settlement. No right to attorneys' fees follows from the denial of Plaintiff's Motion.

Target's Motion to Enforce is granted to the extent the Court exercised jurisdiction over Northern for the purpose of enforcing and clarifying the terms of the settlement reached in this case in November 2015, and is denied in all other respects. The Court declined to enforce or bind Northern to the specific language Target sought to include in the written settlement agreement. Instead, the Court held that Target and Northern are bound to the actual language that was agreed

to in the term sheet. For these reasons, the Court in its discretion concludes that Target also is not entitled to any fees.

As for Northern, its request for fees is denied because, although it partially succeeded in opposing Target's Motion to Enforce, it did not succeed on the main thrust of its opposition to Target's motion that it is not bound by the term sheet negotiated and agreed to by everyone, including its representatives, who attended the November 13, 2015, settlement conference in this case. As a result, Northern unnecessarily delayed resolution of this case and created a lot of extra work for everyone. Further, as discussed above, Northern's position that it is a stranger to this case and to the settlement term sheet is less than forthcoming. Northern's position that it agreed to nothing at the settlement conference also is a bit facetious in light of Mr. Browning's December 9, 2015, email in which he describes exactly what Northern understood it had agreed to in connection with the settlement of this case. *See* Target's Sealed Motion to Enforce [ECF No. 192], Ex. H, 12/9/15 Email from Charles Browning to Robert Burke. Therefore, in the Court's discretion, Northern's request for attorneys' fees and costs also is denied.

### III. CONCLUSION

For all of the reasons set forth herein, Plaintiff's Motion to Enforce Settlement Agreement and For Sanctions [ECF No. 188] is denied as moot, and Defendant/Cross-Claimant Target Corporation's Motion to Enforce Settlement Agreement and for Attorneys' Fees and Costs [ECF No. 193] is granted to the extent the Court will exercise jurisdiction over Northern for the purpose of enforcing and clarifying the terms of the settlement reached in this case on November 13, 2015, and is denied in all other respects. Northern is bound by the agreement memorialized in the term sheet in this case, including without limitation the following language relevant to its dispute with Target in the Michigan Coverage Action: "The settlement will not be

used as an admission including without limitation an admission of liability or coverage in the Michigan litigation. This does not prevent Target from seeking to collect from Northern in the Michigan litigation the amount it paid in this settlement or the judgment it has against Niches and Walsay." *See* Target's Sealed Motion to Enforce [ECF No. 192], Ex. D.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: June 15, 2016