IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANGELA NEAL, individually and as )
Mother and next friend of )
KEON REEVES, a minor, )
)
      Plaintiff, )  Case No. 1:13-cv-05907
)
v. )  Jeffrey T. Gilbert
)  Magistrate Judge
TARGET CORPORATION, et al., )
)
      Defendants. )

## ORDER

Defendant/Cross-Plaintiff Target Corporation's Petition to Enter Judgment [ECF No. 220] is granted in part and denied in part. See Statement below for further details.

## STATEMENT

On July 1, 2015, the then-presiding District Judge in this case granted partial summary judgment in favor of Defendant/Cross-Plaintiff Target Corporation ("Target"). [ECF No. 150.] Specifically, the Court granted summary judgment on Target's express indemnification and breach of contract claims against Defendants/Cross-Claim Defendants Home Niches, Inc., ("Niches") and Walsay, Inc. ("Walsay") — Counts II, III, V, and VI of Target's Crossclaim. [ECF No. 32, ¶¶ 17-22, 23-28, 34-40, 41-46; ECF No. 150, at 8-11, 11-12.] Then, on July 20, 2015, the Court directed entry of final judgment pursuant to Federal Rule of Civil Procedure 54(b) as to the partial summary judgment entered in favor of Target. [ECF No. 156.] Neither Niches nor Walsay appealed that judgment.

On November 13, 2015, the parties settled the remainder of the case. [ECF No. 176.] On that same day, all parties consented to this Magistrate Judge pursuant to 28 U.S.C. § 636(c). [ECF No. 178.] But the case did not come to a peaceful close. Instead, a lengthy dispute arose about one particular aspect of settlement, which the Court resolved on June 15, 2016. [ECF No. 217.]

Shortly thereafter, Target filed a Petition to Enter Judgment ("the Petition"), accompanied by supporting documentation. [ECF Nos. 220, 221.] Walsay responded to the Petition. [ECF No. 229.] Niches never filed a response.

Target requests that the Court enter judgment against Walsay and Niches in the amount of $494,127.96. That amount includes legal fees and costs and a portion of the settlement payment. [ECF No. 220, at 1.] Walsay does not contest much of this. For instance, Walsay does not argue that judgment should not be entered and it does not dispute most of the amounts

that Target claims. Walsay also does not contend that Target's attorneys' billing rates or the amount of time spent on particular tasks are unreasonable. Walsay raises only two objections.

Walsay first points out that a small amount of the legal expenses Target included in its Petition was incurred for work unrelated to the present dispute. [ECF No. 229, at 3.] These expenses total $253.00. *Id.* Target concedes these expenses were "inadvertently included in Target's petition," and that the judgment should be reduced by $253.00. [ECF No. 231, at 2 n.1, 4.] That lowers Target's requested amount to $493,874.96. *Id.* at 4 n.4. That is easy.

Walsay's other objection requires some additional background information before it can be addressed on the merits. After Angela Neal filed the present lawsuit, Northern Insurance Company ("Northern"), Walsay's insurer, filed a declaratory judgment action in Michigan against Walsay, Niches, and Target ("the Michigan Coverage Action"). [ECF No. 217, at 3.] Late last year, Niches and Walsay were dismissed with prejudice from the Michigan Coverage Action. *Id.* That left only Target and Northern fighting about, in essence, whether Northern must reimburse Target for amounts that Target paid to defend and settle the instant case. *Id.* at 3, 7-8.

Walsay argues that Target improperly is attempting to collect $45,678.00 in expenses incurred by Target's attorneys for work "related to [the] Northern Dispute" ("the Northern Dispute expenses"). [ECF No. 229-2.] The bulk of expenses are for time billed by Target's attorneys in this case for communicating with Target's attorneys in the Michigan Coverage Action, analyzing how issues in that case would impact this case and vice versa, and resolving a dispute about the settlement of this case. According to Walsay, the Northern Dispute expenses should not be included in the judgment entered in this case because the indemnification agreement between Target and Walsay and Niches ("the Agreement") applies "to the claims of Angela Neal in this lawsuit" and "does not apply to the litigation between Target and Northern . . . ." *Id.* at 2. Walsay's interpretation of the Agreement, however, does not take account of the broad language to which Walsay and Target agreed when they entered into the Agreement.

The Agreement provides that Walsay "shall defend, indemnify and hold harmless" Target "from and against any and all . . . expenses, including costs and attorney fees, relating to or arising out of any claim or demand of any kind or nature, which any buyer or user of the Goods, or any other person . . . may make against [Target], based upon or arising out of the manufacture, delivery, ticketing, labeling, packaging, placement, promotion, sale or use of the Goods, or [Walsay's] performance of or failure to perform in accordance with the terms of this Contract . . . ." [ECF No. 123-3, at 17.] The "any claim or demand . . ." portion of the Agreement clearly encompasses the claim advanced by Neal in this case ("Neal's claim") because her claim could be (and was) brought against Target and arose out of the defective production of "the Goods." No party contends otherwise. It is the "relating to or arising out of any claim or demand" language that is at issue.

The Court disagrees with Walsay's overly narrow interpretation of the Agreement. Essentially, Walsay reads the Agreement to apply only to the expenses that Target incurred in defending against Neal's personal injury claim. But the text of the Agreement is broader. It

2

entitles Target to any and all expenses "relating to or arising out" of Neal's claim against Target. There is nothing about this language that indicates it is as limited as Walsay contends. Walsay's interpretation is not consistent with the plain meaning of the phrase "relating to or arising out of" which is broad language of inclusion. In the Court's view, the Northern Dispute expenses are encompassed within that language.

Target is not attempting to recover from Walsay or Niches its costs in defending the Michigan Coverage Action and it would not be able to do so; the language in the Agreement does not go that far. But the Michigan Coverage Action is not completely unrelated to this case and time that Target's attorneys in this case spent monitoring that case or taking account of it in defending against Neal's claim in this case relates to or arises out of Neal's claim against Target within the meaning of the Agreement. Moreover, Northern sent its Michigan Coverage Action attorney and a corporate representative to two settlement conferences in this court. *Id.* at 7. Northern paid some portion of the settlement in this case. *Id.* at 12. The settlement term sheet that the parties signed in this case explicitly discussed the Michigan Coverage Action. *Id.* at 9.[1] And it was a fight over whether and how the settlement of this case affected the Michigan Coverage Action that led to the previously referenced post-settlement motion practice in this case.

With this background, the Court can address whether the specific categories of expenses to which Walsay objects "relate to or arise out of" Neal's claim against Target within the meaning of the Agreement.

First, Walsay contends that expenses incurred when Target's attorneys in this case spoke with its attorneys in the Michigan Coverage Action are not recoverable under the Agreement. The Court disagrees. The billing entries that Walsay cites as examples only make vague reference to what matters were covered in the communications—"insurance, "insurance issues," and "declaratory judgment action in Michigan." *See, e.g.,* ECF No. 230-1, at 1, 18-20. Similarly, most of the challenged entries simply refer to communications "regarding" or about the "status" of the Michigan Coverage Action. Still, as noted above, if these discussions related to what was going on in the Michigan Coverage Action, that would not necessarily make them unrelated to Neal's claim. Target's attorneys could not have represented their client's best interests in this case if they were ignorant of how the Michigan Coverage Action was progressing. Knowledge about Target's chances in Michigan would have informed its attorneys about the likely extent of Target's ultimate exposure in this case, impacting the company's settlement and litigation strategies. This is exemplified by a challenged billing entry for "review[ing] and analyz[ing] case law regarding defendant's ability to settle [this case] with codefendant, obtain assignment and pursue insurance company for indemnity." *Id.* at 26.

---

[1] Northern as Walsay's insurer signed the term sheet in this case. Northern in its own right did not sign the term sheet, and the Court did not order it to do so. However, the Court did find that it had jurisdiction over Nothern in connection with the dispute concerning the settlement agreement and it enforced the terms of the settlement against Northern as they related to the Michigan Coverage Action. [ECF No. 217.]

3

Another entry references a telephone call "regarding status of both cases and defense plan." *Id.* at 48. And others describe correspondence regarding, in reference to this case, "settlement," *id.* at 41, the "proposed releases," *id.* at 43, "the settlement conference," *id.*, the "settlement agreement terms," *id.*, and "approval of revisions to release," *id.* at 44. Therefore, the Court finds that these expenses are related to or arise out of Neal's claim against Target.[2]

Next, Walsay challenges expenses related to the post-settlement motion practice in this case. *See id.* at 45-61. It is true that the motion practice did not relate to a term that had any binding effect on Neal because she already had received the settlement payment to which she was entitled under the settlement of this case. But the matters in dispute were material to the settlement from Target's perspective. And Target's decision making process in connection with a settlement of Neal's claim necessarily included reference to how the settlement would impact the Michigan Coverage Action. Therefore, the Court finds that these expenses are related to or arise out of Neal's claim against Target within the meaning of the Agreement.[3]

Also, Walsay takes issue with a series of expenses related to Target's efforts to try to identify any claim that it might have against Walsay's insurance broker. Walsay cites as its example an entry related to the preparation of a memo discussing various issues related to "potential bases for commencing an action against the broker." *Id.* at 22. Presumably, any potential claim against a broker would relate to or arise out of Target's liability on Neal's claim against it. Therefore, the Court finds that this set of expenses also is related to or arise out of Neal's claim against Target given the broad language in the Agreement.

Finally, Walsay fights the inclusion of expenses stemming from work regarding whether Target could have a claim against Northern through Walsay's insurance policy. Most of the challenged entries describe Target's attorneys as reviewing and analyzing the documents and law related to the issues being litigated in Michigan. But the entries reveal that this work still was related to Neal's claim against Target. As described above with respect to the correspondence with Target's Michigan attorney, Target's attorneys in this case had to understand the issues involved in and the status of the Michigan Coverage Action to litigate this case effectively and

---

[2] The Court recognizes that it is citing to documents that were filed under seal in this case. The Seventh Circuit, however, has held "[d]ocuments that affect the disposition of federal litigation are presumptively open to public view, even if the litigants strongly prefer secrecy, unless a statute, rule, or privilege justifies confidentiality" *In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010) (citing *Baxter International, Inc. v. Abbott Laboratories*, 297 F.3d 544 (7th Cir. 2002); *Union Oil Co. of California v. Leavell*, 220 F.3d 562 (7th Cir. 2000)). There is nothing in the Court's citations that reveals privileged matters and the Court's citation to these documents waives no privilege.

[3] Walsay also argues that Target's expenses related to the post-settlement motion practice are not recoverable for the same reasons that the Court denied Target's motion for payment of its attorneys' fees when it ruled on the post-settlement motions. [ECF No. 217.] But the factors that caused the Court to deny Target's request for reimbursement of its fees in that context are completely different than the issues involved in the present dispute concerning Target's Petition to Enter Judgment and whether the amounts sought are covered by the Agreement.

4

evaluate their client's ultimate exposure for Neal's claim. That is exemplified by the billing entry that describes "legal research regarding Michigan insurance law issues arising at [a] settlement conference" in this case. *Id.* at 17.[4] Likewise, other entries discuss attempts to enter into a settlement agreement with Walsay and Niches that would include a provision in which Target promises "not to enforce [any] judgment" that it secured against them in this lawsuit. *Id.* at 33-34. The Court finds that such expenses are related to or arise out of Neal's claim against Target within the meaning of the Agreement.

For all of these reasons, the Court concludes that Walsay's objection to Target's expenses in this case that have some connection to the matters involved in the Michigan Coverage Action, the so-called Northern Dispute expenses, is not meritorious. Because the Court rejects Walsay's argument that the Agreement does not apply to these expenses, the Court need not address Target's contention that it also is entitled to these expenses under the breach of contract judgment as expectation damages. [ECF No. 231, at 2-3.]

The Court orders that judgment be entered in Target's favor and against Walsay and Niches in the amount of $493,874.96.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: August 24, 2016

---

[4] The relevant entry, from 9/24/14, does not specify that the settlement conference occurred in this case. However, a settlement conference was held in this case on that day. [ECF No. 113.] And this entry appears after a billing entry for "attend[ing] settlement conference." [ECF No. 221-3, at 11.] Therefore, the logical conclusion is that the relevant entry references a settlement conference in this case.